TOMPKINS v. AUGUSTA & KNOXVILLE R. R. CO.

1. In action by the heirs at law of a testator against a railroad company to enjoin the construction of its road across the lands of testator, devised to his widow, but claimed by plaintiffs as residuary devisees, the complaint alleged that the widow, now deceased, intestate, had renounced her devise and claimed dower in all of her hus-

band's lands. *Held,* in subsequent action between the same parties, that they could not now deny this allegation and claim as heirs at law of their mother.

2. After evidence offered of facts and circumstances to show that a railroad company had entered by permission the lands of plaintiff, it was competent for defendant to ask its witness whether there "was any act of the owner indicating a dissent."

3. Plaintiff could not testify as to the contents of letters written by him to the president of the defendant company, no notice having been given to defendant to produce the letters themselves. Nor did such testimony, objected to by defendant, become competent upon defendant's testifying, without objection, to such contents.

4. Where a railroad company constructs its road-bed over lands of another by permission of the "owner," it is not a trespasser, and the holders of the legal title to such land cannot maintain an action for the recovery of the strip of land so occupied by the railroad company and for damages therefor.

5. Where a railroad company made entry upon land and constructed its road-bed thereon by permission of the "owner" (which permission may be inferred from the facts and circumstances), such entry is not unlawful, and the railroad company is only liable thereafter for the value of the land so occupied and for any special damage caused by such occupation. *Gen. Stat.* of 1872, ch. lxiii. § 83.

6. The word "owner," as used in this section of the act, means the person who has control of the land; therefore, permission given by executors, who had, under their will, a power of sale for purposes of division or of paying debts, were the owners within the meaning of this section.

7. Where the constitutionality of a statute was not questioned in the Circuit Court, nor by any exception, but is raised for the first time in the arguments here submitted, it is not properly before this Court for consideration.

Before HUDSON, J., Edgefield, March, 1883.

This was an action by Stephen S. Tompkins and others, who were the residuary devisees under the will of James Tompkins, their father, and were also heirs at law of their intestate mother, Huldah Tompkins, against the Augusta & Knoxville Railroad Company, commenced December 9, 1882. The case is thus reported by the Circuit judge:

In the answer to the complaint the railroad company rests its claim to the right of way over the land in question upon the

acquiescence, consent, and permission of the plaintiffs, not denying that the fee in the land is vested in them. At the trial the testimony was directed mainly to this leading issue. The plaintiffs had not granted the right of way, nor had the railroad company had the same condemned under the provisions of the act of the legislature in such case made and provided, nor had any steps been taken by the plaintiffs to recover compensation for the right of way, which the company alleges it is ready, and has always been ready, to make. The chief issue of fact, therefore, submitted to the jury was, whether the defendant company has acquired a right of way over the land of the plaintiffs by their acquiescence, consent, and permission.

The manner of acquiring rights of way is prescribed in Revised Statutes (old edition), pages 352–356, sections 75 to 86 inclusive. Under section 83 of this act the defendant has acquired its right of way, if at all. Therefore in opening my charge to the jury I proceeded to read and expound this statute in its various provisions, and especially the said last named section, and instructed the jury that if the railroad company has acquired a right of way over the lands of the plaintiffs, it is under the provisions contained in section 83 of said act, and not otherwise, as there is no evidence of a grant nor of a condemnation; nor of use and enjoyment of the road-bed a sufficient length of time to raise the presumption of a grant under the common law rule. The company rests its claim, and under the evidence in this case can rest its claim, alone upon the said act of the legislature, and the evidence in the case to bring the alleged acquired right of way within its terms.

I then turned to the case of *Verdier* v. *Railroad Company*, 15 *S. C.*, 477 to 484, as the case containing the authoritative interpretation and most lucid exposition of the sections of said act, and especially of section 83. I told the jury that I preferred to adopt the language of that case in expounding to them the law of the case under consideration, as it was directly applicable and binding; and I proceeded to read in full the words of Justice McGowan on pages 482 and 483, wherein he explains and interprets the language and meaning of section 83. I then made the application to the present case, leaving it entirely to the jury to

say whether the evidence in this case satisfied them, from its preponderance, that the plaintiffs had permitted the defendant corporation "to enter upon the construction of their highway without previous compensation," &c. If the jury should so conclude, I proceeded, in the language of that case, to explain to them how the plaintiffs were estopped from afterwards denying the right of way to the defendant, and how they would be entitled alone to compensation, and the mode and manner in which they would, under the act, have to secure such compensation.

I instructed them that the permission of the executors of the will of James Tompkins, deceased, under whom the plaintiffs claim, would be sufficient, and would be binding upon all the plaintiffs, carefully leaving to the jury to find whether or not that permission had been given. I further explained to them that permission might be given expressly by word of mouth, or might be implied from acts, conduct, silence, and acquiescence, reading again the language of Justice McGowan, and the authorities cited by him in support of this proposition. It appeared in evidence that the road was not constructed in its entire course through this plantation on the exact line of the original or Ashmore survey, but that in a part of its course or line of construction it deviated somewhat from the said survey, and ran in rear of, instead of in front of, the residence, and near the family burial ground. The general direction of the line, however, was that of the Ashmore survey, and, in part, the two lines were the same.

I charged the jury that, if the permission to enter and construct was given, and the entry was made and the construction begun in consequence of this permission, the deviation on a part of the line such as was proved in this case, would not work a forfeiture of the permission, nor would it authorize the executors to revoke the general permission, in consequence of which the money, labor, and time of the company had been expended and bestowed in the construction of the road. A general grant of the right of way, or a general permission to enter and construct, when accepted and acted upon in whole or in part, cannot afterwards be, by the owner of the land, construed into a grant or a permission to locate and construct only on a certain mathematical line.

My charge in this respect is misapprehended by the plaintiffs'

counsel, and incorrectly set out in the case. It is also misapprehension and error in the plaintiffs' counsel to represent me as saying to the jury: "It is for you to say whether from all the circumstances the company believed that there was permission. If so, then that ends the case," &c., &c. The belief of the company could have no weight in enabling the jury to infer permission, unless it was created by the acts, declarations, or conduct of the plaintiffs, the executors. From these and these only could the jury infer permission and find it as a fact, and so I instructed them.

The first *three* exceptions relate to questions of evidence. The question set forth in the first exception was allowed to be asked. Upon the second and third, I have to remark that Mr. S. S. Tompkins was allowed to say that he sent the letters spoken of in these exceptions, but was not allowed to state the contents of the letters, because no notice had been given defendant to produce said letters, and because it may readily be perceived that the exact language and full purport and meaning of a letter written upon such a subject is of the utmost importance. The witness might honestly think he had said one thing, whilst the letter, if produced, would amount to something quite different. Hence I hold that the letter is the best evidence of its contents, and parol evidence thereof could not be admitted, since no notice to defendant had been given to produce these letters.

As to the *fourth* and *fifth* exceptions, it is enough to say that what I did say in regard to the act of 1868, and the case of *Verdier* v. *Railroad Company*, I have already explained.

Exception 6. I charged that the executors had power to give permission, but did not say that they "spoke the voice of the whole family."

Exception 7. Correctly put.

\*   \*   \*   \*   \*   \*

Exception 15. I refused the proposition contained in this request because, as I told the jury, the question was not one of deceit, misrepresentation, and fraud, but one of permission.

Exception 16. I refused this request, because, as I have said, the executors, who were in charge of the land and in full control thereof under the will, had power to give permission such as would bind the devisees under the will.

Exception 17. I refused this request as not applicable to the case because the executors could bind the heirs by their consent.

It should appear in the case that I did charge the 3d and 4th requests of the plaintiffs, which are as follows: "3d. That in order for the jury to conclude that the plaintiffs are estopped, they must find from the evidence that the defendants were induced to locate and construct their railroad by the conduct of the plaintiffs; and that the defendants would not have located and constructed their railroad over the land of the plaintiffs as they did, if it had not have been for the conduct of the plaintiffs. 4th. That the burden of proving such conduct is upon the defendant." These two requests of the plaintiffs I regarded as very pertinent, and involving the very essence of the real issue, and I charged the jury, therefore, as requested.

The following are plaintiffs' exceptions, omitting those which the Circuit judge reported to be incorrect statements of his charge:

1. Because his honor erred in ruling that the defendants could ask the witness, Buckhalter, "Was there, or not, any act of S. S. Tompkins indicating a dissent?"

2. Because his honor erred in ruling out the testimony of S. S. Tompkins that he notified A. M. Aiken, one of the officers of the company, by letter that the company should not go through the land without condemning it according to law.

3. Because his honor erred in ruling out the testimony of S. S. Tompkins that he notified Eugene Verdery, the president of the company, by letter, that the company should not go through the land without condemning it according to law.

4. Because his honor erred in charging the jury that the act of 1868 was alone to be their guide, and that the act gives the landowners a remedy in every case, and that the plaintiffs had their remedy under such act.

5. Because he instructed the jury, after reading to them the case of *Verdier* v. *R. R. Co.*, that the law in that case was applicable to this, whereas the plaintiffs claim that it has no application to the facts, as shown by the testimony.

6. Because he instructed the jury that the executors had suf-

ficient power to give consent to the defendants to enter for purposes of construction, and that they spoke the voice of the whole family.

7. Because he charged the jury the following: "The question then is, Did the executors, or either of them, give consent to enter?"

15. Because he refused to charge the jury as requested by plaintiffs, as follows: "That before they can find a verdict for the defendants, they must find in the evidence adduced: 1. That the plaintiffs have made false representations or concealed material facts from the defendants in regard to the right of way over their land; 2. That these representations were made with knowledge of the facts; 3. That defendants were ignorant of the truth; 4. That the plaintiffs made them with intention that the defendants should act upon them; 5. That the defendants were induced to act upon the false representations;" but after reading the requested instructions, which had been argued by plaintiffs' counsel as propositions of law bearing directly upon the case, he charged the jury that these propositions were not applicable to the case.

16. Because he refused to charge the jury as requested by plaintiffs, as follows: "That if the jury find from the evidence that plaintiffs were tenants in common, and that one or more of the plaintiffs did acts or made declarations or admissions which amount in law to permission to the railroad company to enter upon the land in dispute and construct their road upon it, or to acquiescence in the occupation by the company of the land in dispute, such acts, declarations, or admissions can bind only the parties who made them; and if no such acts, declarations, or admissions were made by other plaintiffs, such plaintiffs not making them are entitled to recover." But, on the contrary, the presiding judge did charge the jury that permission of the executors is sufficient to bind all.

17. Because he refused to charge the jury as requested by plaintiffs, as follows: "That no acts, declarations, or admissions made by one tenant in common can bind his co-tenant, and that this rule applies with particular force in the case of infants." The presiding judge assigned as reason for refusal of this

request, that it "involved a question as to power of executors to bind, and the court holds that their permission is enough, if established."

*Messrs. Abney & Abney* and *Earnest Gary*, for appellants.

*Mr. J. Ganahl*, contra.

September 9, 1884.   The opinion of the court was delivered by Mr. Justice McIver.   This action was brought by the Plaintiffs to recover possession of two strips of land in the possession of the defendant, constituting a part of its road-bed, as well as damages for withholding the same.   It seems that neither the defendant, nor the company whose rights it had acquired by legislation and arrangement, had ever taken the steps prescribed by statute for the purpose of acquiring the right of way over the tract of land conceded to be the property of the plaintiffs, but that it, as well as the company with which it had been consolidated, had taken possession and constructed its railroad under an alleged consent of the owners, still, however, acknowledging its liability to pay the value of the land actually taken, as well as any special damages occasioned thereby.   The jury found a verdict for the defendant, and the plaintiffs appeal on the ground of error on the part of the Circuit judge in his rulings as to the admissibility of certain testimony, and in his charge to the jury.   The exceptions are very numerous, but as many of them were taken under a misapprehension of the judge's charge, as appears by his report settling the case for appeal, it will not be necessary to set out the exceptions in detail.

As we understand the case, two general questions arise out of this appeal: First, whether the Circuit judge erred in his rulings as to the admissibility of evidence.   Second, whether he erred in instructing the jury that the permission or consent of the executors of James Tompkins, or either of them, was sufficient to warrant the defendant in going upon the land of the plaintiffs and constructing its railroad over said land, without first pursuing the mode prescribed by statute for having said land condemned.

While reference must be had to the record (which is too volu-

minous to warrant us in undertaking to make even an abstract of it) for the origin and history of this case, a brief statement of such facts as may be necessary to a proper understanding of the questions raised will, perhaps, be desirable. It is conceded that James Tompkins died seized and possessed of the tract of land over which the railroad of the defendant has been constructed, and that the plaintiffs are his heirs at law; that by his will he devised the said tract of land to his widow, Huldah Tompkins, who died intestate in 1868, leaving as her heirs at law the plaintiffs in this case, together with her grandson, who died in 1872, whose interest the plaintiffs have acquired; and that the plaintiffs, S. S. Tompkins and J. W. Tompkins, are the duly qualified executors of said will.

By the first clause of his will the testator directed that his debts and funeral expenses "be paid out of the debts due me or moneys on hand at my death, and if insufficient, then that my executors, hereinafter named, sell enough of my estate, not herein specially disposed of, either publicly or privately, and upon such terms as they may elect, to pay and satisfy all just claims against me." By the residuary clause of the will all the rest and residue of the estate is devised and bequeathed to certain persons therein named, and for the purpose of effecting division amongst the devisees and legatees so named, the executors are authorized "to sell and convey any part or all of my estate, either privately or at public or private auction, that is at auction at which only the beneficiaries under this clause are permitted to buy."

The plaintiffs contend that the land in question having been specifically devised to the widow, the same descended to them as her heirs at law upon her death in 1868, and that, therefore, the executors of James Tompkins had nothing whatever to do with the land, and had no control over it. It appears, however, from the record of a former suit between these same parties, introduced in evidence in this case, that these plaintiffs there distinctly alleged that the widow "declined to take under the said will, but claimed dower in all of the real estate of the testator." This being so (and the fact that it is so cannot now be denied by the plaintiffs), the devise to the widow never took effect, and the land fell into

the residuum of the testator's estate, and the plaintiffs can only claim it under the residuary clause of the will.

The question as to the competency of certain evidence resolves itself into two branches. After testimony had been adduced for the purpose of showing that the defendant company had entered upon the land in question by the permission or acquiescence of the executors, the following question was propounded to one of the witnesses : "Was there or not any act of S. S. Tompkins indicating a dissent?" which, upon objection, was ruled competent. We do not see any error in such ruling. The point of inquiry was whether the company had entered by permission of the executors, which permission may, as we shall presently see, be inferred from facts and circumstances ; and after evidence had been offered of such facts and circumstances, we not only see no error in the form in which the question was put, but it would seem to be the most natural termination of the inquiry.

The next inquiry is as to the correctness of the ruling by which the witness, S. S. Tompkins, was prevented from testifying as to the contents of certain letters alleged to have been written by the witness to Aiken and Verdery, two of the officers of the company. Nothing would seem to be clearer than that the letters themselves furnished the best evidence of their contents ; and until the proper foundation was laid, it was clearly incompetent to introduce secondary evidence. If, as it seems to be contended, the plaintiffs were satisfied that the letters were in court, in the possession of the defendant or its officers, notice to produce them might have been given, even at the trial (*Reynolds* v. *Quattlebum*, 2 *Rich.*, 140) ; and if the plaintiffs failed to do so, they have no just cause of complaint that the secondary evidence offered by them was rejected. Nor does the fact that Verdery subsequently testified as to these letters, alter the case. His testimony was given *without objection*, and the fact that one party has allowed the other to adduce incompetent testimony without objection, will not authorize him in turn to introduce other incompetent testimony *when it is objected to.*

The next question is as to the power of the executors, or either of them, to give the company permission to enter upon the land and construct its railroad ; for the fact that such permission was

given must be regarded as settled by the verdict of the jury. This question has been argued by the appellants as if the defendant's position was that such permission operated as a transfer of the right of way; but we do not so understand the position of the defendant. On the contrary, by its pleadings in this case, as well as in the former suit between these same parties, the defendant expressly concedes its liability to pay for the right of way, and avers its willingness to do so, whenever the value of the land which it has taken, as well as the special damages, if any, shall be ascertained. The defendant only contends that the permission of the executors operated to relieve them from the charge of trespassing, in entering upon the land and constructing their railroad; and that, as the plaintiffs in this case, in order to enable them to recover, must not only establish their title to the land in question, but must go further and show that the person whom they are seeking to oust is *wrongfully* in possession, they cannot recover if it appears that such person is rightfully in possession.

Under the construction given to section 83 of chapter LXIII., of the *General Statutes* of 1872 (which is the law applicable in this case), by the case of *Verdier* v. *Port Royal Railroad Company*, 15 *S. C.*, 476, where the landowner has permitted a railroad company to enter upon his land and construct its road, he cannot maintain an action to dispossess said company, even though the steps prescribed by the statute for the purpose of condemning so much of said land as may be necessary for the purposes of the company have not been taken. The statute, in compliance with the constitutional provision declaring that private property shall not be taken for the use of a corporation without the consent of the owner, or a just compensation being made therefor, provides that a corporation shall, before entering upon any land for the purpose of constructing its road, give notice to the owner, so that if he objects to such entry, the corporation shall first pursue the course prescribed by the statute to have a condemnation of the land; but if the owner does not object, but on the contrary, permits the company to enter, which permission, as is held by the case above cited, may be inferred from all the facts and circumstances, then such entry does not become unlawful, though it leaves the company still liable to pay for the value

of the land taken, together with any special damage that the land-owner may sustain by reason of such taking.   The only effect of such permission to enter is not to confer any right of way, but simply to relieve the company so entering from the character of a trespasser.

The practical inquiry, therefore, in this case is, whether the defendant had such permission to enter upon the land of the plaintiffs and proceed in the construction of its road; for if it did, then the entry was lawful and the company was rightfully in possession, and this action cannot be maintained.   Inasmuch as the verdict of the jury establishes the fact that the company did have the permission of the executors of James Tompkins, or one of them, to enter upon the land for the purpose of constructing its railroad, the inquiry is narrowed down to the question whether the executors, or either of them, had the power to grant such permission.   The statute, in dealing with this subject, uses the term "owner" of the land, and it is earnestly contended that the executors were not the *owners* of the land in question; but that, at most, they simply had a power to sell, for certain purposes, while the legal title remained in the plaintiffs, who were and still are the *owners* of the land.

It is quite obvious that the statute does not use the term "owner" in the sense of the holder of the legal title, but rather in the sense of one who has the *control* of the land.   If a minor, or other person under disability, holds the legal title, the statute prescribes that the notices and other papers necessary in the proceedings for the condemnation of the land, shall be served, not upon such minor or other person under disability, but upon his guardian, trustee, or committee—that is, upon the person who exercises control over the land, even though he does not hold the legal title, and is not, in the strict sense of the term, the *owner* of the land.   In this case the executors must necessarily have had the control of this land, for they were not only authorized to sell it for division, but, after it had fallen into the residuum, by the widow's renouncing her rights under the will and electing to claim dower in the whole of the real estate, they had also the power to sell the whole or any part of it for the purpose of paying the debts of the testator.   To exercise these powers, the exe-

cutors must, of necessity, have retained the control of the land, and having such control, we see no reason why they, or either of them, could not grant permission to the defendant company to enter upon the land for the purpose of constructing its railroad, without in any manner interfering with the right of such of the devisees as become entitled, on the division of the land appropriated by the company, to claim compensation therefor.

In the argument here, the constitutionality of the act providing the mode of obtaining compensation for lands appropriated by a corporation, has been assailed. But inasmuch as no such question was raised in the Circuit Court, or by any of the exceptions, it is not properly before us for consideration. We may say, however, that even if it should be assumed that the act was unconstitutional (though upon that point we express no opinion), we do not see how it could help the case of the appellants. For without this act, if the company has entered upon the land by proper authority, then it is rightfully in possession and this action cannot be maintained, but the plaintiffs would be remitted to their claim for damages merely.

The judgment of this court is that the judgment of the Circuit Court be affirmed.